TERRENCE DOONAN, plaintiff in error, vs. Jane L. MITCHELL, admr'x., defendant in error.

[1.] Agency is not to be proved, by merely proving, that the person who is assumed to be agent, signed a receipt as such agent.

[2.] When one party introduces in evidence a part of a conversation with the other, the other may introduce the rest of that conversation.

[3.] It is no error in the Court, to refuse a request not authorized by the evidence.

Assumpsit, in Pike county. Tried before Judge E. G. CABANISS, October Term, 1857.

The facts in this case are fully set out in the opinion of the Court.

HAMMOND & SON, for plaintiff in error.

HARTFORD GREEN, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

The suit was brought by Terrence Doonan, against Mrs. Jane L. Mitchell, as administratrix of Samuel Mitchell, deceased.

The declaration contained three counts. The first was to the effect, that in 1846, Doonan and Samuel Mitchell, agreed that Doonan as the agent for Mitchell, should cause lot of land No. 77, in the 14th District of what was originally, Henry county, but is now Fulton county, it being a lot on

which, a great part of Atlanta stands—to be divided by survey, into small lots, and then, should show, and sell, the lots. That, accordingly, Doonan caused this division to be made, and sold off, one hundred and thirty-one lots; that he was engaged in this business, until the 30th day of June, 1854; and that for these services, he was entitled to receive $2,482.

The second count was the common count for work and labor done, and money paid for Mrs. Mitchell, as administratrix, and for Mitchell in his lifetime, and for commissions on the sales aforesaid.

The third, was a *quantum meruit* for the same matters.

To this declaration, Mrs. Mitchell pleaded, amongst other things, a set-off, to the effect that she had placed in his hands, a large number of notes, to be collected for her, or, returned to her, of which notes he still retained a part amounting to about $1500; and had collected and not paid over to her, another part amounting to about $4,000; that Doonan retained another sum of about $800, which he had in hand at the time of the last settlement; and that he also owed her, $1,000, the price of one of the lots taken by Doonan himself, not sold.

Doonan introduced as evidence, the interrogatories of John Collier and Leonard C. Simpson. These proved, in substance, that Doonan began to act as agent for Samuel Mitchell, in 1846, and continued so to do, until April, 1854; that, during this interval, he sold many of the lots of land referred to in the declaration, made divers deeds for the same, was active in showing the land to purchasers, kept off intruders, and was a good agent generally; and, that his services were worth, $300 per year.

Doonan then produced a book containing what purported to be, ten receipts given to him, two, for certain of the notes which had been placed in his hands for collection, and eight, for money collected by him for her on others of the notes. Six signed by Hartford Green, as her agent, and four signed by John H. Mitchell, as her agent; and offered G. J. Green

as a witness, to prove the handwriting of Hartford Green, with the view of showing, that Hartford Green was the agent of Mrs. Mitchell, or of Samuel Mitchell, and as such, signed the six receipts which had his name to them as her agent. G. J. Green was objected to on the ground, that agency cannot be legally proven, by proving the handwriting of the person who is assumed to be the agent— and, notwithstanding that plaintiff contended, that Hartford Green was not a competent witness, because of his being the attorney at law of the defendant, and, that this agency could be legally proved by the said Gilpin J. Green, as proposed. The Court overruled the plaintiff's motion, to introduce Gilpin J. Green, and held, that Hartford Green was a competent witness, to testify in the case for defendant, upon all the matters which did not come to his knowledge, by reason of the relation of client and attorney. To which ruling of the Court the plaintiff excepted.

Doonan, the plaintiff, then introduced Hartford Green, protesting, that Green was incompetent for the defendant, and, by him proved the handwriting to the said receipts; that he was attorney at law for defendant, and had been, from before 19th September, 1848; that the book aforesaid, contained the list of notes placed in Doonan's hands by him, as attorney for Mrs. Mitchell, and, the amounts collected by Doonan, and, the amounts paid over by Doonan; that John H. Mitchell acted as agent for Mrs. Mitchell, and, that the signatures to the receipts purporting to be signed by him, John H., for Mrs. Mitchell, were in his handwriting; that, two of the notes on Doonan, himself, one for $260, the other for $100, had not been paid or returned, as far as he knew; that the two notes for $20 each, on McCulloch had been returned to him, the witness; that, he supposed the amount paid over to him, and to John H. Mitchell, by Doonan, was $7,000 or $8,000; that he saw Mrs. Mitchell sign the powers of attorney, shown him; (powers of attorney to Doonan, to make "titles to ————, ———— block number

—————— in the city of Atlanta;") that, the bonds shown him, (bonds for title, made by Doonan as agent for Mrs. Mitchell, to purchasers of lots—parts of lot 77 aforesaid,) were filled up in the handwriting of Doonan; that he thought Doonan, being a merchant, could have filled up these blanks at ten cents each; that if he, witness, were to charge at all for so small an amount of labor, he should not charge less than one dollar each bond; that the notes stated in the bill of particulars of Mrs. Mitchell, were all given, as far as he knew, for lots in Atlanta; and that the only title, Mrs. Mitchell had, that he knew of, was a deed established in the Inferior Court of Pike county, and a deed from the administrator of the drawer of the lot.

On cross examination, he stated, that the receipt shown him, was signed by Doonan after the death of Samuel Mitchell, while the Atlanta property was in litigation; that Doonan told Mrs. Mitchell, that the purchasers of lots were frequently calling on him, to pay their notes given for the lots; that she said, that she did not desire to demand payment, until the difficulty about the title was settled; that if Doonan would take the notes, and receive such amounts as the makers might desire to pay, she would send them to him by witness; that she did so send them, and he, witness, made out a memorandum of the notes and wrote the receipt for them, and Doonan signed it, and took the notes. That he had heard Doonan say, that the collection of the notes gave him but little trouble, the purchasers coming to him at his store, to make their payments; at one, or more, times, when Doonan paid over to him, money, for Mrs. Mitchell, he suggested to Doonan, to retain something for his services, who replied, that he had deducted out only the amount paid out by him, and that he did not expect to charge Mrs. Mitchell anything, because her testator had been kind to him, in letting him have lots; Doonan, afterwards, said, that she had taken the business out of his hands, and had advertised the same, and that he disliked her doing so; that it was done

because he had been unfortunate in his cotton transactions; that the estate had lost nothing by him, as he then had in his hands, after paying off the liabilities incurred on account of the business, only his own notes, and between seven and eight hundred dollars in money; that he intended to make out an account against her, and sue her, if she did not pay it, but that he should have charged nothing, if he had not met with such losses on cotton, and she had permitted the business to remain in his hands, but then intended to have what the law would allow him; that he, witness, had understood from Doonan, that many of the notes given in 1854, were on irresponsible persons; that Doonan was to assist John H. Mitchell in the sales, in 1854; that Samuel Mitchell died in 1847; that one per cent. on the amount collected by Doonan, would be a fair compensation for collecting—that attorneys usually charged five per cent. when there is no litigation.

The book referred to by the witness, showed a list of 131 notes, and that the notes had been turned over to Doonan by Mrs. M., to be collected or returned; it showed, that, of these notes, a large part had been returned to Mrs. M. and been receipted for, by her, through her agent, John H. Mitchell, and that the rest, except three, had been fully or partially paid to Doonan—the part fully paid being by far the larger part. As to the three, (of which, two were notes on Doonan himself, and the third, a note for $2 50 on ———,) the book did not show what had become of them.

The book also showed, that Doonan had received several sums for Mrs. M., in cash, apparently as, first installments on purchases of lots sold by him partly for cash, and partly on a credit.

Treating the notes retained by Doonan, as, all collected in full, and charging him with them, and charging him with the sums received by him, apparently as cash—first installments, and giving him credit for the amount of the payments to Mrs. Mitchell's agents, for which he held their re-

ceipts, as aforesaid,—the result would be, that at the last of those payments, there would be shown a balance against him, of between $3000 and $4000.

Doonan also proved by Pope, that for his commissions for collecting, he would be entitled to five per cent.

The amount collected by him, including what he paid over, and what he retained, was about $12,000.

The part of the evidence of Green, detailing the conversation between Mrs. Mitchell and Doonan, that happened at the time when Doonan was conditionally employed by her, to collect the notes, was objected to, and the ground of objection was, that this evidence would vary the receipt or contract of collection, subsequently made in writing.   The Court overruled the objection, saying that such conversation was but a part of the conversation that had been drawn out by Doonan himself; and Doonan excepted.

The Court was asked by Doonan to charge, that if what Green testified to, as to Mrs. M.'s title, was true, then, that she had no title, and therefore, that the notes given by Doonan to her, were without consideration, and could not be charged against him.   The Court refused so to charge, and Doonan excepted.

The jury found a verdict for the defendant for $1,203 82.

Doonan then moved for a new trial, the grounds of the motion being the judgments aforesaid excepted to by him, and several grounds which may be reduced into one—that the verdict was contrary to the evidence.

This motion the Court overruled, and Doonan excepted.

The Court below put the exclusion of G. J. Green's evidence, on the ground, that that evidence was offered merely to prove the agency of Hartford Green, in signing the six receipts, and to prove it, by only proving the signature to the receipts to be Hartford Green's—the Court thinking, that this was not a proper mode of proving *agency*.

[1.] We have to take it, as true, that this was the only object

for which the evidence was offered. If so, its exclusion was manifestly proper.

So, the Court put the admission of the sayings of Mrs. Mitchell, uttered in the conversation between her and Doonan, on the ground, that the sayings made a part of a conversation, the other part of which, had been drawn out by Doonan himself.

[2.] Taking it as true, that these sayings were, the part of a conversation, the other part of which, Doonan had drawn out, they were admissible. This is indisputable.

Even if what Green swore, as to Mrs. Mitchell's title to the lot, was true, it was matter which proved, not, that she had no title, but, merely that the deeds with which *he* was acquainted, did not give her the title. She might have had other deeds.

[3.] It follows, that it would not have been right for the Court to tell the jury, that, if what Green swore as to Mrs. M.'s title to the land, was true, she had no title to it, and consequently, that D.'s notes given to her for a part of it, were without consideration.

The remaining ground is, whether the verdict was supported by the evidence. The verdict was for $1203 82 in favor of the *defendant*.

This verdict was, we think, rather too large. If we charge Doonan with all the notes not returned by him, and with all the money received by him, otherwise than on notes, as, received by him in first installments when these were to be in cash; and credit him, with the ten receipts he holds, the result will be, a balance against him at the date of the last of the receipts, of $3,720 ; according to one of Mr. H. Green's calculations (the counsel for Mrs. Mitchell,) and a balance of a sum something larger, according to another of his calculations. The data for the true balance, are all contained in the book. They, we think, will not justify a claim for any greater balance than this last sum. Indeed, we are not to be understood as *deciding* that they justify a claim to the whole

Doonan vs. Mitchell.

of that sum, but, for present purposes, it may be admitted that they do

How stands the counter claim of Doonan for services and commissions?

He was agent eight years, his agency commencing in 1846, and ending in 1854. The date of the last of the ten receipts, is also in 1854, probably the time of the termination of the agency, which was in that year.

His services were worth $300 per year, for the eight years, payable, of course, not later than at the end of each year. If then, the two calculations aforesaid, had, as they should have done, taken these items into the account, they would have allowed Doonan, in addition to what they did allow him, $300 per year commencing in 1847 and ending in 1854. If these sums had been thus allowed him, annually, they would have stopped *interest* on corresponding sums against him. Therefore, in giving him the benefit of them, now, in respect to those calculations, we must allow him interest on them, up to the date of the last receipt; that is to say, we must allow seven years interest on the first; six, on the second; five, on the third; four, on the fourth; three, on the fifth; two, on the sixth; one, on the seventh; and none, on the eighth.

Doing this, we shall have to allow him, for the whole interest, say, $588. Add this to the principal $300, multiplied by 8, which will be $2400, and we have $2988.

To this are to be added Doonan's commissions on the sums collected by him. These sums were, say $12,000, including what he paid over, and what he has still in hands, counting the notes he has in hand as collected.

One witness says, one per cent. was enough for commissions; another says, that five per cent. was not too much. Taking the average, we have three per cent. as the rate. This on $12,000 will make $360, which added to $2988 will make $3348. This taken from $3,720, leaves $372 only, in favor of Mrs. Mitchell, a sum much less than $1,203 82, the

amount of the verdict. Taken from the larger sum found by Mr. Green's second calculation, it still leaves a balance in favor of Mrs. M., of considerably less than the verdict.

These estimates are not precise. The object of them is merely to show, that the verdict was too large, not, by how much, it was too large.

We think, then, that the verdict was larger than the evidence authorized it to be, and on this ground grant a new trial.

Judgment reversed..